Appeal Nos. 2015-1391, 2015-1393, 2015-1394

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
_____

**BLUE CALYPSO, LLC,**
**Appellant,**

**v.**

**GROUPON, INC.,**
**Cross-Appellant.**
_____

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Nos. CBM2013-00033 and CBM2013-00034.
_____

BRIEF FOR INTERVENOR – DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE

THOMAS W. KRAUSE
Acting Solicitor

SCOTT C. WEIDENFELLER
Acting Deputy Solicitor

KAKOLI CAPRIHAN
BENJAMIN T. HICKMAN
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the*
*United States Patent and*
*Trademark Office*

July 15, 2015

# TABLE OF CONTENTS

I.    Statement Of Jurisdiction ....................................................... 1

II.   Statement Of The Issues ........................................................ 2

III.  Statement Of The Case .......................................................... 3

    A.    Introduction .................................................................. 3

    B.    Statutory And Regulatory Background ................................... 4

        1.    Post-grant Review Procedures Under The AIA ........................... 4

        2.    USPTO Rules For Post-grant Review ...................................... 7

    C.    Factual Background And Procedural History ........................... 8

        1.    The Patents-at-Issue Claim The Use Of A Subsidy And
            Subsidy Program To Incentivize Subscribers ............................. 8

        2.    The Board's Institution Of Groupon's Petitions For CBM
            Review ...................................................................... 10

IV.   Summary of Argument ........................................................ 14

V.    Standard of Review ............................................................ 15

VI.   Argument ........................................................................ 16

    A.    The USPTO Believes That This Court Lacks Jurisdiction To
        Review The Director's Decision To Institute Review Of The '679
        And '670 Patents ............................................................. 16

    B.    Blue Calypso Identifies No Reversible Error In The USPTO's
        Actions ........................................................................ 17

i

1.    The USPTO's interpretation of "covered business method patent" was not arbitrary or capricious .........................................18

2.    The Board did not misapply the "technological invention" exemption .........................................................................................21

VII.   Conclusion ...............................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Arent v. Shalala*, 70 F.3d 610 (D.C. Cir. 1995).......................................................17

*Auer v. Robbins*, 519 U.S. 452 (1997) ...................................................... 15-16, 22

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)............................................................................15

*Cuozzo Speed Technologies, LLC, In re*, No. 2014-1301,
    2015 WL 4097949 (Fed. Cir. July 8, 2015) ................................................ *passim*

*Dickinson v. Zurko*, 527 U.S. 150 (1999) ...............................................17

*GTNX, Inc. v. INTTRA, Inc.*, Nos. 2015-1349, 2015-1350, 2015-1352,
    2015-1353, 2015 WL 3692319 (Fed. Cir. June 16, 2015) ...................1, 2, 3, 17

*Litecubes, LLC v. N. Light Products, Inc.*, 523 F.3d 1353 (Fed. Cir. 2008) ............15

*McDaniel, In re*, 293 F.3d 1379 (Fed. Cir. 2002) ....................................16

*Sullivan, In re*, 362 F.3d 1324 (Fed. Cir. 2004) ......................................16

*Versata Dev. Group, Inc. v. SAP Amer., Inc.*, No. 2014-1194,
    2015 WL 4113722 (Fed. Cir. July 9, 2015).................................................*passim*

**Statutes**

5 U.S.C. § 706(2)(A)........................................................................ 16, 17

28 U.S.C. § 1295(a)(4)(A) ........................................................... 1, 2, 17

35 U.S.C. § 311 ...............................................................................5

35 U.S.C. § 316................................................................................5

35 U.S.C. § 316(a) ..........................................................................7

35 U.S.C. § 316(a)(4) .................................................................7

35 U.S.C. § 319 .........................................................................5

35 U.S.C. § 321(b) .....................................................................5

35 U.S.C. § 321(c) ......................................................................5

35 U.S.C. § 324(a) ................................................................4, 15

35 U.S.C. § 324(e) .......................................................... *passim*

35 U.S.C. § 326 ..........................................................................5

35 U.S.C. § 326(a) .....................................................................7

35 U.S.C. § 326(a)(4) .................................................................7

35 U.S.C. § 328(a) .....................................................................6

35 U.S.C. § 329 .......................................................................5, 6

Leahy-Smith America Invents Act, Pub. L. No. 112-29,
    125 Stat. 284 (2011) ................................................... *passim*

## Regulations

37 C.F.R., part 42 ......................................................................7

37 C.F.R. § 42.4 .........................................................................7

37 C.F.R. § 42.108 .....................................................................7

37 C.F.R. § 42.208 .....................................................................7

37 C.F.R. § 42.300(a) .................................................................7

37 C.F.R. § 42.301 ...........................................................4, 11, 15

37 C.F.R. § 42.301(a) ........................................................................8, 12

37 C.F.R. § 42.301(b) ........................................................ 8, 13, 19, 22

37 C.F.R. § 42.304(a) ..........................................................................18

## **Other Authorities**

H. Rep. No. 112-98 (2011) ...............................................................5, 6

Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed. Cir. B.J. 539 (2012) .............................................5

*Office Patent Trial Practice Guide,* 77 Fed. Reg. 48,756 (Aug. 14, 2012) .............22

*Transitional Program for Covered Business Method Patents—Definitions of Covered Business Method Patent and Technological Invention; Final Rule*, 77 Fed. Reg. 48,734 (Aug. 14, 2012) .................................................19

## STATEMENT OF RELATED CASES

The Director of the United States Patent and Trademark Office ("Director") adopts by reference Blue Calypso, LLC's ("Blue Calypso's") and Groupon, Inc.'s ("Groupon's") statements of related cases.  This brief is substantively very similar to those filed by the Director in Appeal Nos. 2015-1397 and 2015-1399.

## I.    STATEMENT OF JURISDICTION

This consolidated appeal arises from two final decisions of the Patent Trial and Appeal Board ("the Board") in transitional post-grant review proceedings for covered business method patents ("CBM review") of U.S. Patent No. 8,155,679 ("the '679 patent") and U.S. Patent No. 8,457,670 ("the '670 patent").  The Board entered its final written decisions on December 17, 2014.  JA1; JA46.  Appellant Blue Calypso and cross-appellant Groupon filed timely notices of appeal of the final Board decisions.  Contrary to Blue Calypso's assertions, this Court lacks jurisdiction to review the USPTO's decisions to institute the CBM reviews, which are "final and nonappealable."  35 U.S.C. § 324(e); *see also GTNX, Inc. v. INTTRA, Inc.*, Nos. 2015-1349, 2015-1350, 2015-1352, 2015-1353, 2015 WL 3692319 at *3 (Fed. Cir. June 16, 2015) ("The Board decision . . . did not make a determination with respect to patentability.  The decision is therefore outside . . . [§] 328(a) . . . and, in turn, outside 28 U.S.C. § 1295(a)(4)(A)."); *In re Cuozzo Speed Technologies, LLC*, No. 2014-1301, 2015 WL 4097949, at *3 (Fed. Cir. July 8, 2015) (holding that this Court lacked jurisdiction over a challenge to an inter partes review institution decision because parallel "§ 314(d) prohibits review of the decision to institute IPR even after a final decision").  This Court otherwise has appellate jurisdiction over Blue Calypso's appeal and Groupon's cross-appeal of

the Board's final written decisions, regarding patentability, under 28 U.S.C.

§ 1295(a)(4)(A).

*Versata Development Group, Inc. v. SAP America, Inc.*, No. 2014-1194,

2015 WL 4113722, at *11 (Fed. Cir. July 9, 2015), holds that the Board's

determination whether a patent is a covered business method patent ("CBM

patent") is reviewable on appeal from a final written decision. In the Director's

view, *Versata* was wrongly decided. The time periods for seeking rehearing in this

Court and for petitioning for certiorari for that decision have not yet run.

## II.    STATEMENT OF THE ISSUES

The USPTO intervenes in this appeal to address a limited set of issues

regarding Blue Calypso's procedural challenges to the Board's institution of CBM

review of the patents-in-suit:

1.      Whether this Court lacks jurisdiction to review the Board's decision

that the '679 and '670 patents are CBM patents.

2.      If the Court reaches the merits of the Board's decision, whether the

Board's finding that the '679 and '670 patents are CBM patents was arbitrary,

plainly erroneous, or otherwise contrary to law when the Board applied USPTO

regulations promulgated under the America Invents Act.

## III.  STATEMENT OF THE CASE

### A.  INTRODUCTION

The USPTO intervenes to address Blue Calypso's procedural challenge to the Board's institution decisions.  In *GTNX*, 2015 WL 3692319 at * 3, this Court recently held that it lacks jurisdiction to review the Board's institution decisions in CBM reviews.  This Court, similarly, has held the same in appeals from inter partes reviews.  *See Cuozzo*, 2015 WL 4097949 at *3.  In the USPTO's view, Blue Calypso may not now re-litigate the Board's determination that the '679 and '670 patents are "covered business method patents" and that they are therefore subject to CBM review.  *But see Versata*, 2015 WL 4113722 at *11 (holding that the Board's determination whether a patent is a CBM patent is reviewable on appeal from a final written decision).  This Court's appellate jurisdiction should extend only to the review of final written Board decisions in inter partes reviews, post-grant reviews, and CBM reviews that address the *patentability* of challenged claims.  *See GTNX*, 2015 WL 3692319 at *1.

In the event that this Court were to consider Blue Calypso's challenge to the Board's institution of CBM review, *see Versata*, 2015 WL 4113722 at *11, the Board did not act arbitrarily or commit plain error in interpreting USPTO regulations when it found that the '679 and the '670 patents are "covered business method patents."  The Board simply applied the statutory and regulatory

3

definitions of "covered business method patent" to the claim limitations "subsidy" and "subsidy program." Blue Calypso did not challenge the Board's construction of those limitations to mean, respectively, "financial assistance given by one to another" and "a system of opportunities designed to give financial assistance to another." JA438; JA5589. In view of those constructions, the Board acted within its authority when it found that the '679 and '670 patents are CBM patents eligible for review governed by 35 U.S.C. § 324(a) and 37 C.F.R. § 42.301. JA438; JA5589. Blue Calypso's attempts to read into the CBM definition additional limitations that do not exist in the statute or regulations are unavailing. And, as the Board properly found, Blue Calypso's patents do not qualify under the narrow "technological inventions" exception, as the technical features of the claims—forwarding advertisements and matching criteria ('679 patent) and sending information that can be used to initiate a communication session and to transmit a message ('670 patent)—are directed to using known technologies and the claims do not recite a technological feature that is novel and nonobvious over the prior art.

## B.   STATUTORY AND REGULATORY BACKGROUND

### 1.   Post-grant Review Procedures Under The AIA

In the AIA, Pub. L. No. 112-29, 125 Stat. 284 (2011), Congress substantially expanded the USPTO's procedures for reconsidering the validity of issued patents. The AIA replaced inter partes reexamination with inter partes review, an

adversarial proceeding before the new Patent Trial and Appeal Board.  *See* 35 U.S.C. § 311.  The AIA also changed the threshold showing necessary for the USPTO to institute an inter partes proceeding; made all patents subject to such review regardless of the date on which they were issued; broadened the estoppel provisions to which petitioning parties would be subject; imposed strict timelines for completion of the review; and permitted an appeal to this Court only from the Board's final decision as to patentability.  See H. Rep. No. 112-98, at 46–47 (2011); Joe Matal*, A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed. Cir. B.J. 539, 598 (2012).

The AIA also introduced an entirely new procedure: "post-grant review."  A petition for such review must be filed within nine months after a patent is issued, 35 U.S.C. § 321(c), but "[u]nlike reexamination proceedings, . . . the post-grant review proceeding permits a challenge on any ground related to invalidity under section 282."  H. Rep. No. 112-98, at 47–48; *see also* 35 U.S.C. § 321(b).  As in an inter partes review, any person other than the patent owner may petition to institute a post-grant review, and the petitioner may participate in the proceedings and any ensuing appeal.  See 35 U.S.C. §§ 311, 316, 319, 326, 329.

In an uncodified portion of the AIA, furthermore, Congress created a special "transitional post-grant review proceeding for review of the validity of covered business method patents."  AIA § 18.  Although this CBM procedure is to "be

regarded as, and shall employ the standards and procedures of, a post-grant review," AIA § 18(a)(1), the AIA authorizes the Director to institute a post-grant review of any "covered business method patent" at any time during the term of the patent, without regard to the normal nine-month window for post-grant review proceedings. *See* AIA § 18(a)(1)(B), (E), (d). Only a person who has "been sued for infringement of the patent or has been charged with infringement under that patent," however, may petition the Director to institute such a CBM review proceeding. AIA § 18(a)(1)(B).

The AIA provides that the transitional post-grant review program for covered business method patents shall expire after eight years. *See* AIA § 18(a)(3)(A). The committee report explained the need for this transitional program, observing that "[a] number of patent observers believe the issuance of poor [quality] business-method patents during the late 1990's through the early 2000's led to the patent 'troll' lawsuits that compelled the Committee to launch the patent reform project 6 years ago." H. Rep. No. 112-98, at 54.

Only the Board's final written decision as to patentability in a post-grant review proceeding is subject to judicial review in this Court. *See* 35 U.S.C. §§ 328(a), 329. Congress provided that the USPTO's threshold decision whether to *institute* a post-grant review—the Agency's determination whether a particular request for review satisfies the statutory criteria for commencement of a

proceeding—shall be "final and nonappealable."  35 U.S.C. § 324(e) ("The

determination by the Director whether to institute a post-grant review under this

section shall be final and nonappealable.").

### 2.    USPTO Rules For Post-grant Review

To implement the AIA's new administrative review schemes, Congress

provided the USPTO with expanded rulemaking authority.  *See generally* 35

U.S.C. §§ 316(a), 326(a); AIA § 18(a)(1), 18(d)(2).  The AIA authorizes the

USPTO to "prescribe regulations . . . establishing and governing" inter partes and

post-grant review proceedings and to specify "the relationship of such review to

other proceedings under this title," among other matters.  35 U.S.C. §§ 316(a)(4),

326(a)(4).  Congress also authorized the USPTO to issue regulations establishing

the transitional program for covered business method patents.  AIA § 18(a)(1).

Pursuant to these express statutory grants of rulemaking authority, the

USPTO has prescribed regulations governing inter partes, post-grant, and CBM

proceedings, as well as general rules of practice before the Board.  *See generally*

37 C.F.R., part 42.  Among other matters, those rules delegate to the Board the

Director's authority to determine whether to institute particular proceedings.  *See*

37 C.F.R. §§ 42.108, 42.208, 42.300(a); *see also* 37 C.F.R. § 42.4.

The USPTO has also promulgated regulations specific to CBM review.  The

regulatory definition of "covered business method patent" mirrors the statutory

7

definition of that phrase: "a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions." 37 C.F.R. § 42.301(a); *see also* AIA § 18(d)(1).  USPTO rules further provide that, "[i]n determining whether a patent is for a technological invention, . . . the following will be considered on a case-by-case basis:  whether the claimed subject matter as a whole recites a technological feature that is novel and unobvious over the prior art; and solves a technical problem using a technical solution." 37 C.F.R. § 42.301(b).

### C.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### 1.    The Patents-at-Issue Claim The Use Of A Subsidy And Subsidy Program To Incentivize Subscribers

The '679 and '670 patents claim peer-to-peer advertising methods and systems that incentivize subscribers, through subsidies, to perform certain steps in the claims.[1]  Both patents identify that a "need exists for a method that offers more frequent and effective direct advertising to peer-to-peer users."  JA103 at 1:36-40; JA122.  In particular, the specification discloses that there was a "declining ability

---

[1] The application underlying the '670 patent is a continuation of the application underlying the '679 patent; the patents share the same specification.  This brief will cite primarily to the '679 patent and the prosecution record associated with that patent, and will cite to the '670 patent if that patent or prosecution record are meaningfully different.  Citations to the record will cite both proceedings in parallel.

to offer advertisements through traditional broadcast advertising media." JA103 at 1:36-37; JA122. The '679 and '670 patents seek to solve this business problem by describing a method for advertisers to target ads to users based on demographic profiles of the users and then incentivize those users through the use of a subsidy to refer those ads to other individuals using general well-known computer components. *See e.g.,* JA103 at 2:38-41; JA122 ("the intermediary communication subsidy program 13 may be developed using an object-oriented programming language such as Java$^{TM}$ or C++, C#, or other programming language"); JA103 at 2:26-28; JA122 ("communication devices include cellular phone, personal digital assistants (PDA), personal computers"); JA103 at 2:42-45; JA122 (communication transmission may be "a cellular phone call, a video conferencing session, an instant message"); JA103 at 2:56-62; JA122 ("network 6 may be the Internet, a private network, a cellular phone network, or other service provider networks").

Both claim 7 of the '679 patent and claim 1 of the '670 patent recite:

> A method for providing access to an advertisement from an advertiser to a source communications device possessed by a subscriber . . . comprising the steps of . . . providing a *subsidy program* to the subscriber based on the match . . . and recognizing a *subsidy*, according to the *subsidy program* for the subscriber after a termination of the communication session.

JA109 at claim 7; JA127-128 at claim 1 (emphasis added). The claimed subsidy program enables advertisers to identify subscribers to subsidize communication

9

fees, offer product discounts, generate and accumulate reward points, and mitigate or defer other types of subscriber expenses.  JA104 at 3:39-45; JA123.

### 2. The Board's Institution Of Groupon's Petitions For CBM Review

After Blue Calypso filed suit against Groupon for patent infringement of these and other related patents, Groupon filed two petitions requesting CBM review of the '679 and '670 patents.  In its Preliminary Response as to both petitions, Blue Calypso argued that Groupon had not met its burden to establish that the patents were "covered business method" patents.  JA365-377; JA5529-5540.  While Blue Calypso concedes that the patents disclose and claim "subsidies" and "subsidy programs" (JA369, JA5533), it argued that the "subsidy need not be financial in nature; rather, it may be a non-financial item of value such as 'reward points.'"  JA366; JA5530.  Blue Calypso also contended that the patents have nothing to do with financial activity or with the management of money, banking, investments and credit because they are directed to peer-to-peer advertising between mobile communication devices.  JA373-374; JA5537-5538. Further, Blue Calypso argued that the patents are for a technological invention, which is excluded from the CBM patent definition, because the claims "recite a technological feature that is novel and nonobvious over the prior art," because, during prosecution, the USPTO was able to assign the applications to a particular field in the United States Classification System and the Agency previously allowed

10

the patents.  JA377-379; JA5540-5543.  Pointing to Figure 1 in both the '679

patent and the '670 patent, Blue Calypso also indicated that the patents solve a

technical problem with "several inter-connected technological components that

communicate and otherwise interact with each other to realize a novel and non-

obvious peer-to-peer advertising system."  JA379-380; JA5543-5545.

Subsequently, the Board granted Groupon's petitions and instituted CBM

review as to claims 1-27 of the '679 patent and claims 1-5 of the '670 patent.

JA459; JA5604.  As a threshold matter, the Board found in its institution decisions

that the '679 and '670 patents are "covered business method patents."  JA436-441;

JA5586-JA5592.  The Board came to that finding by applying the definition of

"covered business method patent" in the AIA and the analytical rules in the

USPTO's regulations.  *See id*.

In determining whether the '679 patent and '670 patent were subject to

CBM review, the Board focused its analysis on the claims of the patents.  JA438-

439; JA5588-5589.  The Board explained that, under the USPTO's regulations,

"financial product or service" should be interpreted broadly.  JA436 *citing* AIA §

18(d)(1), 37 C.F.R. §42.301; JA5587.  Moreover, its inquiry is "controlled not by

whether a patent has to do with 'financial activity or with the management of

money, banking, investments, and credit,' or its classification," as Blue Calypso

attempted to cast the inquiry, "but whether the patent 'claims a method or

11

corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service.'" JA438 *citing* 37 C.F.R. § 42.301(a) (definition of covered business method patent); JA5588.

Because both claim 7 of the '679 patent and claim 1 of the '670 patent recite "recognizing a subsidy, according to the subsidy program for the subscriber," the Board construed "subsidy" as "financial assistance given by one to another" and "subsidy program" as "a system of opportunities designed to give financial assistance to another," and determined that the subject matter of these claims is therefore financial in nature. JA438; JA5589. The Board rejected Blue Calypso's argument that these claims merely "touch on commerce or business," because the terms "subsidy" and "subsidy programs" are central to the claims, and without such a subsidy or subsidy program, there is no incentive to perform the other steps in the claims. JA438-439; JA5589. Accordingly, the Board found that the subject matter of the claims of the '679 and '670 patents qualify as "covered business method patents" as defined by the Agency's regulations. JA439; JA5589.

The Board also found that the '679 and '670 patents do not claim a "technological invention," which Section 18 of the AIA expressly excludes from the definition of a "covered business method patent." JA439-441; JA5589-5592; AIA § 18(d)(1). To determine whether a patent is for a technological invention, the

Board noted that it considers "whether the claimed subject matter as a whole recites a technological feature that is novel and unobvious over the prior art and solves a technical problem using a technical solution." JA439; J5589; 37 C.F.R. § 42.301(b). The Board noted that Blue Calypso's reliance on figures in the specification is misplaced, since the proper inquiry is to focus on the claims themselves. JA440; JA5590.

The Board also found Blue Calypso's assertion that the patents recite technological features because the patents were classified in a particular manner during the original prosecution to be irrelevant, since the actual claims themselves, and not classification, is pertinent to the inquiry. *Id.* The Board acknowledged that an Examiner, during prosecution, may have identified an allegedly novel and nonobvious process of forwarding an advertisement in a particular manner. JA441; JA5591-5592. The Board reasoned, however, that (a) the elements of the claims directed to subscribers and advertisers are not technological; and (b) the claimed elements relating to advertisements and matching criteria (in the '679 patent) and to sending information that can be used to initiate a communication session and to transmit a message (in the '670 patent) are directed to using known technologies and do not recite novel or nonobvious features over the prior art. JA441; JA5591-5592. The Board determined that the claimed subject matter does not recite a technological feature that is novel and unobvious over the prior art. *Id.*

13

Consequently, the Board found, the '679 and '670 patents do not fall under the technological invention exception. *Id.*

In its final written decisions, the Board reiterated its prior reasoning that Groupon had standing to file the petitions as the '679 and '670 patents were "covered business method patents" and not "technological inventions." JA19-A21; JA63-65. With respect to patentability, the Board concluded that claims 7-16 and 23-27 of the '679 patent and claims 1-5 of the '670 patent are unpatentable. JA44; JA89.

## IV.    SUMMARY OF ARGUMENT

The USPTO believes that *Versata*'s holding—that this Court has jurisdiction to address the Board's determination that a patent is a CBM patent, even if this Court agrees that its claims are unpatentable—was wrong. In any event, the Board did not depart from its authority in instituting review in this case. The USPTO, pursuant to statutory authority, promulgated regulations for determining whether a patent is a "covered business method patent" under the AIA. The '679 and '670 patents fit comfortably within the statutory and regulatory definitions of a "covered business method patent." As the Board found, the patents-at-issue claim the use of subsidies and subsidy programs to incentivize subscribers to perform certain steps in the claims. And Blue Calypso does not dispute the Board's constructions of the claimed "subsidy" and "subsidy programs," as being "financial assistance given by

one to another" and "a system of opportunities designed to give financial

assistance to another." In view of those constructions, the Board acted within its

authority when it found that the '679 and '670 patents are CBM patents eligible for

review governed by 35 U.S.C. § 324(a) and 37 C.F.R. § 42.301. JA438; JA5589.

Blue Calypso's attempts to read into the CBM definition additional limitations that

do not exist in the statute or regulations are unavailing. Further, the Board

properly determined that Blue Calypso's patents do not qualify under the narrow

"technological inventions" exception, as the technical features of the claims—

forwarding advertisements and matching criteria ('679 patent) and sending

information that can be used to initiate a communication session and to transmit a

message ('670 patent)—are directed to using known technologies and the claims

do not recite a technological feature that is novel and nonobvious over the prior art.

## V.    STANDARD OF REVIEW

This Court reviews its own jurisdiction de novo. *See Litecubes, LLC v. N.*

*Light Products, Inc.*, 523 F.3d 1353, 1360 (Fed. Cir. 2008). Regulations issued by

the USPTO under a statutory grant of rulemaking authority are entitled to

deference unless based on an unreasonable construction of the statute, *see Cuozzo*,

2015 WL 4097949 at *19; *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,

467 U.S. 837 (1984), and the USPTO's interpretation of its own regulations is

"controlling unless plainly erroneous or inconsistent with the regulation," *Auer v.*

15

*Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks omitted); *see also In re McDaniel*, 293 F.3d 1379, 1382 (Fed. Cir. 2002) ("An agency's interpretation of its own regulations is normally entitled to considerable deference and that interpretation ordinarily will be accepted unless it is plainly erroneous or inconsistent with the regulation.").  The Board's actions may not be set aside unless "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law."  *In re Sullivan*, 362 F.3d 1324, 1327 (Fed. Cir. 2004); 5 U.S.C. § 706(2)(A).

## VI.    ARGUMENT

### A.    THE USPTO BELIEVES THAT THIS COURT LACKS JURISDICTION TO REVIEW THE DIRECTOR'S DECISION TO INSTITUTE REVIEW OF THE '679 AND '670 PATENTS

Under the applicable statute and this Court's pre-*Versata* case law, Blue Calypso cannot void the USPTO's patentability determination by challenging the Agency's decision to commence the CBM review in the first place.  Although this Court may review the merits of the USPTO's ultimate decision with respect to patentability, Congress provided, and this Court has affirmed, that the Agency's threshold decision to initiate the administrative proceedings is unreviewable. Accordingly, this Court lacks jurisdiction to consider Blue Calypso's challenge to the Board's institution decisions that the '679 and '670 patents are allegedly not CBM patents, because such decisions are "final and nonappealable."  35 U.S.C. §

16

324(e); *see also GTNX*, 2015 WL 3692319 at *3 (holding that all determinations

other than the Board's patentability determination under § 328(a) fall "outside 28

U.S.C. § 1295(a)(4)(A)"); *Cuozzo,* 2015 WL 4097949 at *3 (holding that § 314(d)

prohibits review of the decision to institute inter partes review even after a final

decision). *But see Versata*, 2015 WL 4113722 at *11 (holding that the Board's

determination whether a patent is a CBM patent is reviewable on appeal from a

final written decision).

B.    **BLUE CALYPSO IDENTIFIES NO REVERSIBLE ERROR IN THE USPTO'S ACTIONS**

The Board's determination that the '679 and '670 patents are "covered business

method patents" under the AIA and the USPTO's regulations was not contrary to

Congress's intent in creating CBM review.

As an initial matter, Blue Calypso fails to acknowledge the appropriate

standard of review for this issue.  If the Board's decision is reviewable on direct

appeal at all, "the only issue here is whether the [USPTO's] discharge of that

authority was reasonable," a question that "falls within the province of traditional

arbitrary and capricious review under 5 U.S.C. § 706(2)(A)."  *Arent v. Shalala*, 70

F.3d 610, 616 (D.C. Cir. 1995); *see also Dickinson v. Zurko*, 527 U.S. 150, 152

(1999).  The Board's actions here fall well within the scope of authority that

Congress granted the Agency under the AIA.  The Board's actions come nowhere

near approaching an arbitrary action or abuse of discretion.

17

1.  **The USPTO's interpretation of "covered business method patent" was not arbitrary or capricious**

The Board found that the '679 and '670 patents are "covered business method patents" because they claim the use of "subsidies" and "subsidy programs" and the subject matter "performs data processing or other operations used in the practice, administration, or management of a financial product or service." JA439 *citing* 37 C.F.R. § 42.304(a); JA5588. The Board based its determination on its construction of the claim terms "subsidy" and "subsidy programs," finding that the terms, which are central to the claims, mean "financial assistance given by one to another," and "a system of opportunities designed to give financial assistance to another." JA438; JA5589. Focusing on the actual claims of the patents, it was hardly arbitrary or irrational for the Board to conclude that a method where financial subsidies and subsidy programs are used to incentivize subscribers to perform certain specific steps of the claims is a method for data processing or other operations used in the practice, administration, or management of a financial product or service within the meaning of Section 18(a) of the AIA.

In challenging the Board's determination, Blue Calypso does not dispute the Board's construction of "subsidy" and "subsidy programs." Blue Calypso only offers the vague contention that the patents "are primarily about a method for the management and distribution of *advertising content* . . . ." Blue Calypso Br. at 20. That contention, which is nothing more than attorney argument, has no basis in the

18

claims themselves.  USPTO regulations do not instruct the Board to view patents at issue in light of how a patent owner elects to characterize them in a brief.  When it passed the regulations governing CBM review, the USPTO determined that the Board would evaluate whether a patent is a "covered business method patent" by examining the language of the claims—the metes and bounds of protection that the patent owner sought when it applied for a patent.  *See* Transitional Program for Covered Business Method Patents—Definitions of Covered Business Method Patent and Technological Invention, 77 Fed. Reg. 48,734, 48,736 (comment 8) (Aug. 14, 2012); *see also* 37 C.F.R. § 42.301(b).  The USPTO also determined that a patent with one or more claims directed to a covered business method is subject to CBM review, even if the patent contains other claims.  *See id.*

The Board followed that approach here.  The Board explained that, under the USPTO's regulations, its inquiry is "controlled not by whether a patent has to do with 'financial activity or with the management of money, banking, investments, and credit,' or its classification, *but whether the patent 'claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service.'*" *See* JA438 (emphasis added); JA5588.  While Blue Calypso disagrees with some of the legislative history that the USPTO cited in promulgating its regulations, Blue Calypso does not ultimately challenge the analytical framework, as set forth

19

in the USPTO's regulations, or the Board's application of that framework to the claims here. *See generally* Blue Calypso Br. at 20-23.

In offering its unsupported contention that the patents "are primarily about a method for the management and distribution of *advertising content*," Blue Calypso attempts to define a "covered business method patent" to be something narrower than that identified in the AIA. Blue Calypso Br. at 20-23. Blue Calypso argues that, to relate to a "financial product or service" within the meaning of Section 18(a), "the Board's jurisdiction" must be limited "to products or services traditionally (but not necessarily) originating in the financial sector—things involving banks, brokerages, holding companies, insurance firms, and their industry-specific products and services (i.e., activities involving finance as the focus, not merely activities that happen to involve a commercial transaction)." Blue Calypso Br. at 21. Such a narrow reading of the statute is plainly wrong. Nowhere does the AIA restrict a "financial product or service" to the financial sector. In *Versata*, the Court noted that:

> the definition of "covered business method patent" is not limited to products and services of only the financial industry, or to patents owned by or directly affecting the activities of financial institutions such as banks and brokerage houses. The plain text of the statutory definition contained in § 18(d)(1)—"performing ... operations used in the practice, administration, or management of a financial product or service"—on its face covers a wide range of finance-related activities. The statutory definition makes no reference to financial institutions as such, and does not limit itself only to those institutions.

*Versata*, 2015 WL 4113722 at *16 (rejecting Versata's narrow reading of the statute and holding that Versata's patent, which claims a method for determining a price of a product, fell well within the terms of the statutory definition of a "covered business method patent").

Here, the Board followed the text of the AIA and the USPTO's regulations when it applied the definition of "financial product or service." The Board's, and the USPTO's, view that CBM patents are not limited to the financial services industry is the product of a careful, reasoned rulemaking exercise in which the Agency considered and rejected the narrow reading of the statute that Blue Calypso advocates.[2]

## 2. The Board did not misapply the "technological invention" exemption

Blue Calypso does not challenge the USPTO's explicit authority to define "technological invention" by regulation. *See* AIA § 18(d)(2). Nor does Blue Calypso dispute the validity of the regulation that the USPTO promulgated, which provides that in determining whether a patent is directed to a technological invention, "the following will be considered on a case-by-case basis:  whether the

---

[2] Blue Calypso argues that the USPTO is improperly "picking and choosing its preferred legislative history to expand its jurisdiction" and broaden the language of the statute. Blue Calypso Br. at 22-23.  But it is Blue Calypso, not the USPTO, that seeks to read into the statutory text limitations that Congress conspicuously did not enact.  The legislative floor statements on which Blue Calypso relies (Br. 22-23) only underscore that the statutory text itself imposes no such limitation.

21

claimed subject matter as a whole recites a technological feature that is novel and unobvious over the prior art; and solves a technical problem using a technical solution." 37 C.F.R. § 42.301(b); AIA § 18(a). Blue Calypso contends only that the Board misapplied this regulation to the '679 and '670 patents in defining "technological invention" unduly narrowly in view of the plain language of the statute. Blue Calyspo Br. 24.

That contention is meritless. The USPTO's interpretation and application of its own regulatory definition is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461 (internal quotation marks omitted); *see also Versata*, 2015 WL 4113722 at *14 ("Congress, in addition to the specific authorization to the USPTO to adopt regulations defining the meaning of "technological invention," also gave the USPTO broad authority over the entire § 18 program . . ."), *id*. at *16 ("the expertise of the USPTO entitles the agency to substantial deference in how it defines its mission"). Blue Calypso cannot make that showing. The Board hewed closely to established agency guidance in refusing to invoke the "technological invention" exception. The Board observed that, when it promulgated its definition of a "technological invention," the USPTO also published a practice guide identifying "claim drafting techniques would not typically render a patent a technological invention under 37 C.F.R. 42.301(b)." *Office Patent Trial Practice Guide*, 77 Fed. Reg. 48,756, 48,764 (Aug. 14, 2012);

22

JA439-440; JA5589-5590.  That practice guide explained, *inter alia*, that "[m]ere recitation of known technologies, such as computer hardware," normally will not render an invention "technological," even if the computer is used to accomplish a process or method that is otherwise novel and nonobvious.  *Id.*

Applying that guidance here, the Board concluded that the '679 and '670 patents do not claim a "technological invention" because the features of the claims are either directed to features that are not technological, or the elements that are technological which are related to forwarding advertisements and matching criteria (JA441) and sending information that can be used to initiate a communication session and to transmit a message (JA5591) "are directed to using known technologies."  JA441; JA5591.  There is nothing in the claimed subject matter, and Blue Calypso fails to cite to anything in describing the alleged inventions (Blue Calypso Br. at 9-13), demonstrating that the patents recite a technological feature that is novel and nonobvious over the prior art.  For instance, even Figure 1 of the patents, which Blue Calypso cites in its brief in support of its contention that the patents are "technological inventions," shows that the network, source communication device, destination communication device, and intermediary software, cited in the claims, are generic elements.  Blue Calypso Br. at 9.  And the Board's conclusion that the claimed subject matter does "not solve a technical problem using a technical solution" is similarly reasonable and supported by the

record, because, as the Board found, the claims themselves do not recite any novel technological features. JA439-441; JA5589-5592.

As the Board's findings show, the premise of the claimed inventions is to address a business problem with generic computer hardware and software. *See id.* That is the antithesis of a "technological invention" and, indeed, is the precise type of invention that Congress sought to bring within the scope of CBM review. *See Versata*, 2015 WL 4113722, at *17-18 (affirming the Board's finding that a method that could be achieved "in any type of computer system or programming or processing environment," and accordingly "no specific, unconventional software, computer equipment, tools or processing capabilities are required" was not a technological invention, as defined by the agency). Blue Calypso does not dispute the Board's findings, but merely argues that the statute is unworkable and "narrower than congressional intent," which, as noted above, is meritless. Indeed, under Blue Calypso's expansive definition, likely no patents would be eligible for CBM review. Moreover, Blue Calypso does not address the legal standards for determining whether an agency exceeded its authority and cites no case in support of its argument that the USPTO's definition should be set aside. The Board's conclusions are rational, consistent with the plain language of PTO's regulation, and supported by the record.

## VII.  CONCLUSION

The USPTO believes that the Court lacks jurisdiction to review the issues addressed in this brief.  Even if the Court does review these issues, the Board's actions were not arbitrary, capricious, or an abuse of discretion.  The institution decisions of the Board, therefore, should be affirmed.


Dated: July 15, 2015                    Respectfully submitted,


                                        /s/ Kakoli Caprihan
                                        THOMAS W. KRAUSE
                                          *Acting  Solicitor*

                                        SCOTT C. WEIDENFELLER
                                          *Acting Deputy Solicitor*

                                        KAKOLI CAPRIHAN
                                        BENJAMIN T. HICKMAN
                                          *Associate Solicitors*

                                        *Office of the Solicitor*
                                        *U.S. Patent and Trademark Office*
                                        *Mail Stop 8, P.O. Box 1450*
                                        *Alexandria, Virginia 22313-1450*

                                        *Counsel for the Director of the United*
                                        *States Patent and Trademark Office*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2015, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system. I further certify that I will cause 6 paper copies to be filed with the Court within five days of the Court's acceptance of the brief.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/Kakoli Caprihan
KAKOLI CAPRIHAN